**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

**BRENDA D. WILLIAMS,**

    **Plaintiff,**

v.                                                    **Case No: 5:11-cv-641-Oc-34PRL**

**MARION COUNTY PUBLIC SCHOOL**

    **Defendant.**

## REPORT AND RECOMMENDATION[1]

This matter is before the Court on Defendant's Motion for Summary Judgment with supporting memorandum of law and exhibits. (Doc. 37). Plaintiff has filed a Response with a supporting memorandum of law and exhibits. (Doc. 54). For the reasons set forth below, the motion (Doc. 37) should be **GRANTED**.

    **I.    BACKGROUND**

Plaintiff Brenda D. Williams, who is African-American, was employed by Defendant Marion County Public School from 1986 until 2011.[2] She began working for Defendant at Reddick-Collier Elementary, and in 2005, she was promoted to a position in Staff Development. In 2006, Plaintiff was promoted to the position of Program Specialist. During the 2008-2009 school year, Plaintiff transferred to the position of Varying Exception Inclusion Teacher at Howard Middle School. Both parties understood the transfer to be a temporary move. That year, Stacey

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[2] The facts included in this paragraph are either identified by both parties as undisputed (see Docs. 37 and 54), or are facts to which Plaintiff testified in her deposition (Doc. 37, Exh. A).

Bush also transferred from a position in Staff Development to a position in one of Defendant's schools. In April 2009, Defendant notified Plaintiff that she was being placed on administrative leave. That month, the superintendent informed Plaintiff that he was recommending her termination. Defendant terminated Williams in November 2011.

Plaintiff subsequently brought the instant lawsuit, alleging that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (hereinafter "Title VII"); 42 U.S.C. § 1981; and the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 (hereinafter "FCRA"). (Doc. 1). She alleges that Defendant violated these statutes by subjecting her to disparate treatment and a hostile work environment due to her race. As to her disparate treatment claim, Plaintiff alleges that she was denied promotions due to her race, while the following white employees with less experience were promoted: (1) Sally Weaver was promoted to HQ Class Development Coordinator in 2007-2008; (2) Sue Hopkins and Michelle Surman were promoted to Program Specialist in 2009; and (3) Stacey Bush was returned from a classroom position to Staff Development in 2009. Plaintiff also contends that she was disciplined more harshly than white employees over issues related to taking leave. And, as to her hostile work environment claim, Plaintiff contends that she was been subjected to derogatory comments and abusive disciplinary actions based on her race and that, despite her complaints, her supervisors took no steps to stop the harassment.

In its Motion for Summary Judgment, Defendant first argues that Plaintiff cannot pursue her 42 U.S.C. § 1981 claim because she has not brought a claim under 42 U.S.C. § 1983. (Doc. 37). Next, Defendant argues that Plaintiff's failure to promote to HQ Class Development Coordinator claim is time barred, that no such position was available, and that Plaintiff did not apply for the position. Nor did Plaintiff apply for the Program Specialist position. As to the remaining disparate treatment allegations, Defendant argues that Plaintiff cannot show that

comparators were treated differently than she was and that, like Bush, Plaintiff would have returned to Staff Development if she had been an employee in good standing. Even if Plaintiff could establish a *prima facie* case of disparate treatment, Defendant argues that she cannot rebut its legitimate, nondiscriminatory reasons for its actions, such as Plaintiff's excessive absenteeism. Finally, Defendant argues that Plaintiff cannot establish a *prima facie* case of a hostile work environment.

In response, Plaintiff first argues that the HQ Class Development Coordinator position was not posted electronically and that if it had been, she would have applied for the position. (Doc. 54). As to the Program Specialist positions, Plaintiff notes that the positions were posted, but that some positions are only mentioned to some employees. And, as to disciplinary issues, Plaintiff asserts that the attendance policy at Howard Middle School was not a district-wide policy.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court reviews "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Crawford v. Carroll*, 529 F.3d 961, 964 (11th Cir. 2008). The Court considers the "evidence and reasonable factual inferences drawn therefrom in a light most favorable to the non-moving party." *Id.* The moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant is successful on this score, the non-moving party must then come forward with sufficient evidence to establish the existence of the elements on which she will bear the burden of proof at trial. *Id.* at 322-23. The non-moving party may not simply rest on the pleadings, but must use evidence such as affidavits, depositions, answers to interrogatories, or

admissions on file to show that there is a genuine issue of material fact that remains for trial.  *Id.* at 324.

### III.  DISCUSSION

#### A.  *42 U.S.C. § 1981*

Pursuant to 42 U.S.C. § 1981, all persons in the United States have the same rights as white citizens with regards to making and enforcing contracts.  Although § 1981(c) prohibits the impairment of these rights by state actors, this section does not create a remedy for a violation of § 1981.  *Butts v. Cnty. of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000).  Rather, to enforce a violation of § 1981, an individual must bring an action under 42 U.S.C. § 1983.  42 U.S.C. § 1983 (stating that a person who, under the color of state law, deprives another person of her rights, privileges, or immunities shall be liable); *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989) ("We hold that . . . § 1983 . . . provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor."); *Butts*, 222 F.3d at 892, 894-95 (affirming the district court's grant of summary judgment on the basis that the plaintiff could not proceed with a cause of action brought solely pursuant to § 1981).

Because Plaintiff has not brought a § 1983 action, she cannot proceed with her § 1981 claims.  *See Butts*, 222 F.3d at 894.  Accordingly, Defendant's motion for summary judgment on these claims should be GRANTED.

#### B.  *Failure to Promote – HQ Class Development Coordinator*

Title VII and the FCRA prohibit employers from discriminating against employees on the basis of the employee's race.  42 U.S.C. § 2000e-2(a); Fla. Stat. § 760.10(1).  Claims brought under Title VII and the FCRA are analyzed under the same framework.  *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010).

An employee must exhaust certain administrative remedies to proceed with a Title VII lawsuit. *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002). An employee in Florida must file an Equal Employment Opportunity Commission ("EEOC") charge within 300 days of the discriminatory act. 42 U.S.C. § 2000e-5(e)(1); *Joe's Stone Crabs, Inc.*, 296 F.3d at 1271. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (identifying a failure to promote as an example of a discrete act). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* Similarly, "[a] litigant under the FCRA must file a complaint with the state of Florida or the EEOC within 365 days of the purported violation." *Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1210 n.2 (11th Cir. 2010); *see also* Fla. Stat. § 760.11(1).

Here, Plaintiff failed to exhaust her administrative remedies as to the HQ Class Development Coordinator position for the 2007-2008 school year. Although it is unclear from the record when this position was allegedly filled,[3] even if it was not filled until the last day of 2008, Plaintiff's May 28, 2010, EEOC charge, (Doc. 37, Exh. U), was filed both more than 300 and more than 365 days after December 31, 2008, *see* 42 U.S.C. § 2000e-5(e)(1); Fla. Stat. § 760.11(1). Accordingly, Defendant's motion for summary judgment is due to be GRANTED as to Plaintiff's claim of failure to promote to HQ Class Development Coordinator position for the 2007-2008 school year.

---

[3] Defendant asserts that such a position was never filled and that Plaintiff's claim must fail because Defendant could not have failed to promote Plaintiff to a position for which it was not hiring. The undersigned notes that the affidavit on which Defendant relies, (Doc. 37, Exh. T), merely indicates that the position was not posted. The affidavit does not specify whether such a position existed or was filled.

### *C. Failure to Promote – Program Specialist*

The plaintiff bears the "'burden of proving discriminatory treatment by a preponderance of the evidence,'" and where she attempts to do so through circumstantial evidence, the Court relies on the *McDonnell Douglas*[4] framework. *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1202 (11th Cir. 2013) (*quoting Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)). Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination. *Id.* If plaintiff establishes a *prima facie* case by a preponderance of the evidence, the burden of production shifts to the defendant, who must "introduce evidence of 'some legitimate, nondiscriminatory reason' for its employment decision." *Id.* (*quoting McDonnell Douglas Corp.*, 411 U.S. at 802). If the defendant introduces such evidence, the plaintiff must show that the defendant's proffered reason was "a pretext for unlawful discrimination." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326 (11th Cir. 2011). To establish pretext, the plaintiff must confront the defendant's legitimate, nondiscriminatory reason "'head on and rebut it.'" *Kidd*, 731 F.3d at 1206 (*quoting Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*)). Throughout the *McDonnell Douglas* analysis, the burden of persuasion remains with the plaintiff. *Id.* at 1202.

The elements of a *prima facie* case for a failure to promote claim include: (1) plaintiff is a member of a protected class; (2) plaintiff applied for and was qualified for the promotion; (3) plaintiff was rejected despite her qualifications; and (4) equally or less qualified employees outside of plaintiff's class were promoted. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010).

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Plaintiff has not established a *prima facie* case as to her claim that Defendant discriminatorily failed to promote her to Program Specialist in 2009, instead promoting Sue Hopkins and Michelle Surman. According to the affidavit of Debra L. Mueller, a Supervisor in Defendant's Employment Services Division, this position was posted, but Plaintiff did not apply for the position. (Doc. 37, Exh. T); *see also Brown*, 597 F.3d at 1174. Plaintiff has presented no evidence that rebuts or contradicts Mueller's statement that the Program Specialist position was posted, but that Plaintiff did not apply for the position. *Celotex Corp.*, 477 U.S. at 322-24. In fact, Plaintiff's testimony confirms that the position was posted. (*See* Doc. 37, Exh. A at 88-91). Accordingly, Defendant's motion for summary judgment is due to be GRANTED as to Plaintiff's claim of failure to promote to Program Specialist in 2009.

### D.  Disparate Treatment – Failure to Return to Staff Development

A disparate treatment *prima facie* case generally consists of the following elements: (1) "plaintiff was a member of a protected class"; (2) plaintiff was qualified for the position; (3) plaintiff was subjected to an adverse employment action; and (4) "similarly situated employees outside of the protected class were treated differently." *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012). The comparators "must be 'similarly situated in all relevant respects.'" *Brown*, 597 F.3d at 1174 (*quoting Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). To determine whether an employee is an acceptable comparator, the Court "evaluate[s] whether the employees [were] involved in or accused of the same or similar conduct and [were] disciplined in different ways." *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008) (internal quotations omitted). "In doing so, 'the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples

with oranges.'" *Id.* (*quoting Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006)).

Plaintiff has not established a *prima facie* case as to her claim that Defendant discriminatorily failed to return her to Staff Development in 2009 when Bush was returned to Staff Development. Specifically, Plaintiff has not established that Bush is a sufficient comparator. According to the affidavit of Marilyn Underwood, Defendant's Executive Director of Staff Development, Bush returned to Staff Development in July 2009. (Doc. 37, Exh. O). At that time, Plaintiff had already been recommended for termination. (*Id.*). According to Underwood, had Plaintiff been an employee in good standing at that time, she would have been able to return to Staff Development. (*Id.*). Plaintiff has presented no evidence to show that she and Bush were "'similarly situated in all relevant respects.'" *See Brown*, 597 F.3d at 1174. For example, Plaintiff has not presented evidence to show that Bush was also not in good standing in July 2009 or that Bush was otherwise subject to disciplinary action at that time. Accordingly, Defendant's motion for summary judgment is due to be GRANTED as to Plaintiff's claim of disparate treatment for failing to return her to Staff Development in 2009.

### *E. Disparate Treatment – Disciplinary Actions*

Plaintiff also has not established a *prima facie* case as to her final claim of discriminatory disparate treatment—that she was disciplined more harshly than white employees—because she has failed to identify comparators outside of her protected class who were treated differently than she was treated.

According to a March 3, 2009, letter from Kathryn Collins, the principal at Howard Middle School, Plaintiff had exhausted her paid leave and had utilized 124.50 hours of uncompensated leave during the 2008-2009 school year. (Doc. 37, Exh. F). Collins instructed Plaintiff not to

take additional uncompensated leave, to provide a medical certificate for any earned sick leave taken during the next six months, and to request earned sick leave in writing at least three days before using such leave.  (*Id.*).  On March 20, 2009, Collins issued a written reprimand to Plaintiff for taking an additional ten days of uncompensated leave following the March 3, 2009, notice.  (Doc. 37, Exh. G).  Collins later warned Plaintiff that she was not permitted to miss a presentation scheduled for April 17, 2009.  (Doc. 37, Exh. H).  Plaintiff was subsequently placed on administrative leave, (Doc. 37, Exh. I), and recommended for termination, (Doc. 37, Exh. J).  In the letter informing Plaintiff that he was recommending her termination, Defendant's superintendent, James Yancey, Jr., explained that Plaintiff's absence on April 17, 2009, constituted willful insubordination of Collins's instructions.  (Doc. 37, Exh. J).

Plaintiff has identified no employees who accrued a nearly identical level of uncompensated leave or who were reprimanded for failing to report to work after being instructed by their supervisors to do so.  In her deposition, Plaintiff identified Dwonette Dilworth, Tracy Barrow, and Tara Hart as employees who had utilized all available leave, but had not been reprimanded.  (Doc. 37, Exh. A at 162-64).  However, Plaintiff further testified that she did not know whether Dilworth's or Barrow's leave had been compensated or uncompensated.  (*Id.* at 162-63).  As to Hart, Plaintiff identified her as an employee who continued working after utilizing all available leave, but Plaintiff did not testify as to whether Hart had utilized uncompensated leave.  (*Id.* at 164).  In an EEOC intake questionnaire included with Plaintiff's response to the motion for summary judgment, Plaintiff identified Hart, Barrow, Denise Gregory, and Susan Marks as employees who had been disciplined less harshly for attendance issues.  (Doc. 54).  Plaintiff did not specify in the questionnaire how much leave she believed that Barrow, Gregory, or Marks had used or how much of that leave was uncompensated.  (*See id.*).  Plaintiff asserted

that Hart had used all available leave before going on maternity leave, but she did not specify whether Hart had failed to obtain approval for her maternity leave in advance. (*See id.*). Moreover, as to all four employees identified in the questionnaire, Plaintiff did not state whether they had failed to report to work after being instructed by their supervisor to do so. (*See id.*).

Plaintiff has produced no evidence that her identified comparators committed misconduct that was nearly identical in both quantity and quality to the misconduct for which Plaintiff was disciplined. *See McCann*, 526 F.3d at 1373. That is, Plaintiff has failed to show that, like her, the comparators utilized more than 100 hours of uncompensated leave and then failed to report to work after being specifically instructed to do so by their supervisors. (*See* Doc. 37, Exhs. F, G, H, and J). Accordingly, Plaintiff has not established a *prima facie* case of discriminatory disparate treatment as to disciplinary actions, and Defendant's motion for summary judgment is due to be GRANTED on this claim.[5]

### F. Hostile Work Environment

"Title VII prohibits a hostile work environment in which a series of separate acts . . . collectively constitute one unlawful employment practice." *McCann*, 526 F.3d at 1378 (internal quotations omitted). A hostile work environment claim encompasses "repeated conduct, such as

---

[5] Plaintiff does not seem to have brought a claim of unlawful termination. (*See generally* Doc. 1). Nonetheless, in the interest of completeness, the undersigned notes that Defendant would be entitled to summary judgment on such a claim. Assuming *arguendo* that Plaintiff had established a *prima facie* case as to her termination, she nonetheless has not rebutted Defendant's legitimate, nondiscriminatory reason for terminating her—that her April 17, 2009, absence violated Collins's instructions not to take additional unpaid leave and not to miss the presentation on April 17, 2009. (*See* Doc. 37, Exh. J). Though Plaintiff has explained that she missed work that day for a doctor's appointment, (*see, e.g.*, Doc. 37, Exh. A at 172-75, 189), she has not met Defendant's reason head on and rebutted it or otherwise shown that it was a pretext for discrimination on account of her race, *see Kidd*, 731 F.3d at 1206; *Smith*, 644 F.3d at 1326. Accordingly, Defendant's motion for summary judgment would be due to be GRANTED on a claim of discriminatory termination.

discriminatory intimidation, ridicule, and insult." *Id.* (internal quotations omitted). Such a claim thus rests "'on the cumulative effect of individual acts.'" *Id.* (*quoting Morgan*, 536 U.S. at 115). The elements of a hostile work environment claim are: (1) the plaintiff belongs to a protected class; (2) the plaintiff was subject to unwelcome harassment; (3) the harassment was based on a protected characteristic of the plaintiff; (4) "'the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment'"; and (5) "'the employer is responsible for such environment under either a theory of vicarious or of direct liability.'" *Id.* (*quoting Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).

Statements that do not relate to the employee's protected characteristic are not considered in reviewing a hostile work environment claim. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012). In determining whether statements relate to the protected characteristic, the Court considers "'the social context in which particular behavior occurs and is experienced by its target.'" *Id.* (*quoting Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

As to the severe or pervasive element, "the plaintiff must prove that the environment was both subjectively and objectively hostile." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010) (*en banc*). Whether harassment is objectively severe or pervasive so as to meet the requirements of a hostile work environment is "judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* (internal quotations omitted). In conducting this analysis, the "court looks to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McCann*, 526 F.3d at 1378 (internal quotations omitted);

*see also Jones*, 683 F.3d at 1303-04 (concluding that, where there were seven racist incidents over the course of the year, and the incidents increased in frequency and seriousness, such that the final incidents "could be perceived as 'physically threatening,'" the plaintiff had met his burden to survive summary judgment on his hostile work environment claim). Moreover, "Title VII is not a 'general civility code,'" and it does not prohibit profanity or harassment alone. *Reeves*, 594 F.3d at 809 (*quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

As an initial matter, a number of statements that Plaintiff alleges contributed to the hostile work environment do not relate to Plaintiff's protected characteristic—her race.[6] *See Jones*, 683 F.3d at 1297; (Doc. 1). Accordingly, the undersigned does not consider these statements in analyzing the hostile work environment claim.

As to the remaining incidents that Plaintiff alleges constituted a hostile work environment, she has not shown that such incidents were "sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment."[7]  *See*

---

[6] The following incidents were identified in the Complaint, but do not relate to Plaintiff's race: (1) July 2007 – comment that Plaintiff was moving too fast; (2) January 2008 – comment that Plaintiff was making her coworkers look bad by attending training during a school break; (3) February 2008 – comment that Plaintiff beat her kids (4) February 2009 – supervisor and her secretary singing "Onward Christian Soldiers" while marching past Plaintiff's desk; (5) March 2009 – comment that Plaintiff needed to help with test make-ups and that "[y]ou all need to be careful with strokes."

[7] The following incidents, when considered in the light most favorable to Plaintiff, may at least arguably be related to her race: (1) March 2007 – comment that Plaintiff's car was burglarized because Plaintiff was the wrong color; (2) August 2007 – statement that Plaintiff needed to stay in her place and do what her coworker told her to do; (3) October 2007 – statement, "They are known to lie and steal"; (4) February 2008 – comment that whiteboard training sounded better than blackboard training; (5) March 2008 – comment that Plaintiff ran a slave trade at her house; (6) April 2008 – question, "Where's the noose?" (emphasis omitted); (7) May 2008 – comment that Plaintiff did not belong there; (8) June 2008 – question asking Plaintiff what the hell she was doing there and calling her an arrogant bitch; (9) January 2009 – question asking Plaintiff whether she had been to Hog Valley and telling her not to get caught because she would never return; (10) February 2009 – statement that another teacher had heard that Plaintiff was having trouble on the plantation; (11) February 2009 – statement that Plaintiff did deserve a seat, but that there was no

*McCann*, 526 F.3d at 1378. Plaintiff has alleged that a total of 13 incidents that may arguably be related to her race occurred over a period of two years. (*See* Doc. 1). Unlike *Jones*, it does not appear that these incidents increased in frequency or in seriousness. *See* 683 F.3d at 1303-04. Moreover, also unlike *Jones*, although a number of the comments at issue were rude and offensive, most did not rise above the level of a "mere offensive utterance" to be "physically threatening or humiliating." *See* 683 F.3d at 1303-04; *McCann*, 526 F.3d at 1378. As to perhaps the most serious comment at issue—the question, "Where's the noose?"—Plaintiff testified that she reported the comment to Underwood and to Deputy Superintendent Diana Greene because the harassment was making her "very uncomfortable." (*See* Doc. 37, Exh. A at 130-33). There is no indication, however, the Plaintiff felt threatened by this comment. Moreover, Plaintiff did not testify that the alleged incidents unreasonably interfered with her performance. *See McCann*, 526 F.3d at 1378. Rather, she testified that she reported the incidents because she did not want them to begin affecting her performance and that her performance during her time with Defendant was "perfect." (Doc. 37, Exh. A at 133). Because the alleged incidents occurred infrequently, did not increase in frequency or in severity, were not physically threatening, and did not unreasonably interfere with Plaintiff's work performance, Plaintiff has not shown that the incidents were "sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment." *See McCann*, 526 F.3d at 1378. Accordingly, Defendant's motion for summary judgment is due to be GRANTED on Plaintiff's hostile work environment claim.

---

opportunity there for her; (12) March 2009 – statement by the assistant principal, "I guess another one is out the door"; and (13) April 2009 – statement by Collins while working at the school's car line that "slavery is not over."

## IV. RECOMMENDATION

For the reasons stated above, it is respectfully **RECOMMENDED** that the Court:

(1) GRANT Defendant's Motion for Summary Judgment (Doc. 37);

(2) DIRECT the Clerk to enter judgment in favor of Defendant Marion County Public School and against Plaintiff Brenda D. Williams; and

(3) DIRECT the Clerk to terminate any pending motions and to close the file.

Recommended in Ocala, Florida on February 3, 2014.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy